UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAR 0 8 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-145-GWU

CAROLYN WATKINS, PLAINTIFF,

VS.   **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Watkins

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Watkins

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Carolyn Watkins, a 52 year-old woman with a high school equivalency diploma and past work as a customer service/department manager/service desk clerk, financial services clerk, and customer service/layaway clerk (Tr. 87, 404), was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative conditions of the lumbar spine and L5-S1 spondylolisthesis (being status post L5-S1 fusion surgery and having "post laminectomy syndrome"), hypertension, left knee arthritis, a pain disorder, and a depressive disorder. (Tr. 21). Nevertheless, the ALJ determined Mrs. Watkins retained the residual functional capacity to perform "light" level work, with no climbing of ladders, ropes, and scaffolds, and occasional stooping, crawling, and climbing ramps and stairs. (Tr. 23). The ALJ proceeded to find that she could return to her past relevant work as a customer service clerk and, therefore, was not entitled to

7

benefits. (Tr. 23-5). The Appeals Council declined to review, and this action followed.

In making his residual functional capacity determination, the ALJ rejected functional restrictions given by the plaintiff's treating neurosurgeon, Dr. Dennis Menke. The ALJ did not dispute that Dr. Menke had limited the plaintiff to 10 pounds lifting, would need a sit/stand option every 30 minutes and could work for only waist height to shoulder height. (Tr. 18-19, 22). The Court concludes that none of the reasons given by the ALJ are adequate to reject the opinion of a treating source.

Dr. Menke had started treating Mrs. Watkins in December, 2001 for a back injury, and obtained an x-ray showing degenerative changes and Grade 1 spondylolisthesis. (Tr. 216). After a subsequent MRI showed mild foraminal stenosis, and noting the plaintiff's pain was not improving, Dr. Menke performed an operation consisting of an L5 laminectomy with right foraminotomy and left total facectomy, with construction of pedicle screws, an interbody fusion, "replacement Harms fusion cages," and right posterior iliac crest bone graft. (Tr. 133). The operation took place on March 13, 2002 and while, initially, Mrs. Watkins appeared to be doing well (Tr. 210-11), she continued to complain of low back and buttock pain (Tr. 208). As early as August 23, 2002, Dr. Menke concluded that it was unlikely that she would be able to return to work with her current symptoms, and could not stand for a "prolonged" period of time. (Id.). He discussed specific

8

restrictions on November 22, 2002 of no lifting over 10 pounds, being able to switch from sitting to standing every 30 minutes, and "working only from waist height to shoulder height." (Tr. 207). He reiterated these restrictions on March 31, 2003, as the plaintiff was preparing an unsuccessful return to work as a "door greeter" for her former employer, Kmart. (Tr. 205). Dr. Menke commented that "if these restrictions can be met, I think she can try to return to work[;] I cannot guarantee that she will be able to tolerate it[; i]f they asked her to do something which exceeds these restrictions, then I think she should certainly refuse . . . ." (Id.). The plaintiff reported on her next office visit that she had been unable to tolerate the job for more than three days. (Tr. 204). Dr. Menke ordered a myelogram, and commented that "only if something is found that can be improved, would I think it is likely she could ever get back to work." (Id.). He added, "if no significant compressive lesions are found that can be improved with surgery, I think she likely is going to have to file for disability." (Id.). The myelogram showed no sign of any neural impingement (Tr. 203, 354) and, after attempting a local injection at the bone graft site which provided relief only for a few days, Dr. Menke recommended a referral to a pain clinic. (Tr. 202).

Essentially, the ALJ gave three reasons for declining to accept Dr. Menke's opinion.

9

First, the ALJ noted that a state agency medical consultant had reviewed Dr. Menke's restrictions in March, 2003, and concluded that the plaintiff could perform a light level exertion, with non-exertional restrictions of never climbing ladders, ropes, and scaffolds, occasionally stooping, crawling, and occasionally climbing ramps and stairs. (Tr. 22, 327-34). This is consistent with the hypothetical question. However, the state agency physician, Dr. James E. Ross, inconsistently noted that there were no treating/examining source conclusions that were significantly different from his findings (Tr. 333), and elsewhere stated that Dr. Menke's restriction on lifting no greater than 10 pounds was "given considerable weight and reflected as such in the RFC" (Tr. 335). He did not clearly explain why this lifting restriction to 10 pounds which was given "considerable weight" was changed in his assessment to 20 pounds. The only apparent rationale is that Dr. Menke's opinion was an "initial assessment," and "[s]he is some better since her surgery." (Id.). Dr. Ross could not have been aware that 17 days after giving this opinion, Dr. Menke reiterated the same restrictions. (Tr. 205).[1] Dr. Ross's opinion was not based on a review of the entire record and, thus, was not substantial evidence to overcome the opinion of a treating source. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In addition, his apparent impression that the restrictions had been given prior to the surgery,

---

[1] Dr. Ross also noted that given the plaintiff's history and findings, her allegation that her activities of daily living were severely affected by her back pain appeared to be credible. (Id.).

10

rather than afterward, was not correct. Moreover, the ALJ cited the opinion of a one-time consultative examiner, Dr. O. M. Patrick (Tr. 361-8), who did not comment on the treating physician's restrictions.[2]

The second reason advanced by the ALJ for not accepting Dr. Menke's restrictions was that the plaintiff's testimony indicated that she "could sit 30 to 40 minutes 6 to 7 hours a day and could stand for 40 minutes, which exceeds the limits assigned by Dr. Menke." (Tr. 203). Her statement at the administrative hearing was slightly different, in that she felt she could stand "40 minutes maybe the longest" before she had to sit down (Tr. 414), and "the most I can sit is, it's really actually 30 minutes . . . [; s]ometimes I might [sit] 40 minutes" (Tr. 417). In context, the plaintiff appeared to be testifying that 40 minutes of sitting or standing without changing positions would be exceptional. She did testify that she could sit for 6 to 7 hours in an eight-hour day if she could alternate sitting and standing at 30 minute intervals (Id.), but not at the 30 to 40 minute intervals indicated by the ALJ, and her actual testimony was not facially inconsistent with Dr. Menke's restrictions. Additionally, she testified that her attempted return to work as a "door greeter" had allowed her to sit for 30 minutes and then stand for 30 minutes, was only for four hours a day, and she was unable to continue after three days. (Tr. 408, 415).

---

[2] It is not clear which records Dr. Patrick had available for review. He restricted the plaintiff from lifting over 25 pounds maximum, 10-15 pounds repetitively, and added that "she should not repetitively bend to or lift from floor level. (Tr. 361).

11

Third, while finding the plaintiff's allegations "credible" to an extent, the ALJ indicated that her activities were "not those typically associated with a totally disabled individual," and then proceeded to list largely trivial activities such as taking care of personal needs, managing money, preparing meals, shopping, using a telephone, managing medications, doing laundry and dishes, driving an automobile, showering, and reading. (Tr. 23). It is not clear why most of these activities would be inconsistent with the restrictions given by Dr. Menke, particularly his lifting restriction. The Commissioner's Medical-Vocational Guidelines provide that a person, like the plaintiff, who is "closely approaching advanced age" would ordinarily be found disabled if they are limited to sedentary work, can no longer perform past relevant work, and lack transferable skills.

The Court notes that there are some additional problems with the administrative decision.

The ALJ found that, although Mrs. Watkins could return to her past relevant work as a customer service representative, she did not describe the requirements of the job separately from her other work at Kmart such as retail manager. (Tr. 23, 88, 409-10). She did state, however, that the duties could involve unloading a truck, and some of her work might involve lifting 50 pounds or more. (Tr. 410). The ALJ drew the conclusion that the past relevant work was within the residual functional capacity he had determined based on section 299.367-010 of the Dictionary of

12

Watkins

Occupational Titles (DOT), which describes the duties of a customer service specialist in an Army post exchange at the "light" level of exertion. Since the plaintiff's job as she described it would evidently involve greater than light level exertion, this section would not appear applicable to her situation.[3] The ALJ made an alternative finding regarding another past job as "financial services clerk." Although she could not do this work as she performed it because it involved climbing, the ALJ felt that the activities of making copies of credit card receipts, "looking through files, paper, and computer," and sending copies to banks would transfer to the "sedentary" jobs of File Clerk, DOT 206.397-034 and 206.367-014, and Correspondence Clerk, DOT 209.367-010. (Tr. 23).[4] Therefore, she could "return to the job of a financial services worker as it is typically performed in the national economy."(Id.). There is no section 209.367-010 in the current DOT database available on Westlaw; however, the job of "Correspondence Clerk" is listed as a sedentary position at 209.362-034. While these jobs are possibly consistent with the plaintiff's past work as it is performed in the national economy, testimony from a vocational expert (VE) to this effect would be preferable given the existing lack of clarity.

---

[3]The ALJ did not make a finding regarding an ability to perform this particular job as it exists in the national economy, only a finding as to how the plaintiff performed it.

[4]Both the jobs of File Clerk I, DOT 206.387-034 (not 206.397-034 as stated in the hearing decision) and File Clerk II, DOT 206.367-014, are listed as "light" level jobs.

13

Finally, the mental factors should be re-evaluated. It was inconsistent to find that Mrs. Watkins had a "severe" impairment due to depression and a pain disorder, but to find no psychological restrictions as a result. More significantly, the ALJ's reliance on the opinion of Consultative Psychologist Kenneth Starkey is problematical, considering the patent contradiction between his indication on a mental assessment form that Mrs. Watkins had no worse than a "limited but satisfactory" ability to make occupational, performance, and personal-social adjustments (Tr. 376-7) and his statement in the body of his report that the plaintiff would need three to six months of formal psychiatric and psychological care, including weekly psychotherapy, before she "could be rendered psychologically appropriate for vocational training or placement" (Tr. 374). In the absence of credible findings from Dr. Starkey, the only examining source to give an opinion, Dr. James Templin (Tr. 200), would be controlling, and his restrictions were serious.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the ___8___ day of March, 2006.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE